# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALBERT S. FINARELLI, III, Co-executor of
The ESTATE OF ALBERT S. FINARELLI, JR.,
and KATHLEEN FINARELLI,

: CIVIL ACTION NO. 3:19-CV-178

Plaintiffs,

:(JUDGE MARIANI)

v.

MONSANTO COMPANY, OSBORN & BARR
COMMUNICATIONS, INC.,
and OSBORN & BARR HOLDINGS, INC.,

Defendants.

## MEMORANDUM OPINION
## I. INTRODUCTION

Here the Court considers Defendants' Osborn & Barr Communications, Inc. and Osborn & Barr Holdings, Inc.'s Motions to Dismiss Plaintiff's Petition for Lack of Personal Jurisdiction, or, in the Alternative, for Failure to State a Claim (Doc. 6). Defendant Monsanto Company ("Monsanto") removed this action from the Luzerne County Court of Common Pleas on January 31, 2019, based on diversity jurisdiction. (Doc. 1.) The action arises from the death of Albert S. Finarelli, Jr., who died from pancreatic cancer on January 26, 2015. (Pls.' Compl. ¶ 46, Doc. 2 at 13.) Plaintiffs' Complaint contains six counts: Count I - Wrongful Death against all Defendants; Count II – Survival Action against all Defendants; Count III – Strict Liability (Design Defect) against Defendant Monsanto; Count IV – Strict Liability (Failure to Warn) against Defendant Monsanto; Count V – Negligence against

Defendant Monsanto; and Count VI – Fraud, Misrepresentation, and Suppression against Osborn & Barr. (*Id.* ¶¶ 49-150, Doc. 2 at 13-35.)

With their pending motion, Defendants Osborn & Barr Communications, Inc. and Osborn & Barr Holdings, Inc. ("O&B Defendants") assert that they are not subject to the personal jurisdiction of the Court and, alternatively, the Complaint does not state a claim upon which relief may be granted. (Supp. Br., Doc. 6-1 at 3.) Plaintiffs respond that the Court has personal jurisdiction over O&B Defendants and their Complaint states a cognizable claim against O&B Defendants. (Opp. Br., Doc. 8 at 4-5.) In their reply brief, O&B Defendants aver that Plaintiffs have not remedied the deficiencies upon which O&B Defendants moved to dismiss. (Reply Br., Doc. 10 at 1.)

After full consideration of the parties' briefs and related documents, the Court concludes that Defendants' Osborn & Barr Communications, Inc. and Osborn & Barr Holdings, Inc.'s Motions to Dismiss Plaintiff's Petition for Lack of Personal Jurisdiction, or, in the Alternative, for Failure to State a Claim (Doc. 6) are properly granted on the basis of the Court's finding that the current record does not support personal jurisdiction for either of the O&B Defendants.

## II. FACTUAL BACKGROUND

Defendant Monsanto discovered the herbicidal properties of glyphosate and manufactured the product Roundup® which is used to kill weeds that commonly compete with the growing of crops. (Pls.' Compl. ¶¶ 6, 16, Doc. 2 at 7, 9.) Osborn & Barr

Communications, Inc. and Osborn & Barr Holdings, Inc. were responsible for marketing Roundup® and related products until approximately 2012. (Pls.' Compl. ¶ 9, Doc. 2 at 7.) Plaintiffs' aver that "Defendants frequently advertised and sold Roundup® in Luzerne County, Pennsylvania" where the decedent, Albert S. Finarelli, Jr., purchased and used the product." (Pls.' Compl. ¶¶ 9, 12-14, Doc. 2 at 7.) All of the injuries suffered by Plaintiffs occurred in Luzerne County. (Pls.' Compl. ¶ 15, Doc. 2 at 7.)

As summarized in the brief in opposition to O&B Defendants' motion, Plaintiffs' Complaint further alleges the following:

> On July 29, 2015, the International Agency for Research on Cancer ("IARC") issued the formal monograph relating to glyphosate classifying glyphosate as a Group 2A herbicide, which means that it is a probable carcinogenic to humans – a probable cause of cancer. *Id,* ¶¶ 19-20. Nevertheless, Monsanto, since they began selling Roundup, has represented it as a "safe" general-purpose herbicide for widespread commercial and consumer user, and create no unreasonable risks to human health or to the environment. *Id,* ¶ 21.
>
> Moving Defendants marketed Roundup for two decades, representing it as safe to humans and the environment, disseminating advertising and other marketing efforts that proclaim to Roundup users, and potential Roundup users, that the products create no unreasonable risks to human health or to the environment. *Id,* ¶ 35. Moving Defendants' marketing efforts touted Roundup's efficacy and safety, never once disclosing the EPA classification mentioned above or the fraud involved in safety testing. *Id,* ¶ 36. Furthermore, Moving Defendants helped design the packaging for Roundup products, which never warned of the cancer risk, and spearheaded efforts to portray Monsanto as an anti-cancer crusader in its farmer-friendly marketing, remaining absolutely silent as to the connection between Monsanto's biggest seller and the users' increased risk of cancer. *Id,* ¶¶ 37-38.
>
> Monsanto has acknowledged that Monsanto and its sales of agricultural products including Roundup "wouldn't be the same" without Moving Defendants. *Id,* ¶ 39. Additionally, Moving Defendants even developed and

3

maintains [sic] a public, national marketing website to advance Monsanto's sales called "Growing Safely: Focused on Safety in Agriculture" with numerous different subsections, failing to mention to consumers and potential consumers that Roundup is closely associated with cancer, nor recommending any safety precautions for the application of Roundup. *Id*, ¶ 40. Monsanto has known for decades that Defendants falsely advertise the safety of Roundup, specifically Monsanto has represented that its spray-on-glyphosate-based herbicides, including Roundup, were "safer than table salt" and "practically non-toxic" to mammals, birds, and fish. *Id*, ¶ 41

    Albert S. Finarelli, Jr., Decedent ("Decedent") purchased and used more than seventy (70) gallons of Roundup and / or other Monsanto glyphosate products per year from approximately 1994 through 2015 on his property located at 808 Hartman Road, Hunlock Creek, Luzerne County, Pennsylvania, in part, due to Plaintiffs' reliance on the national media campaign run by Moving Defendants concerning the safety of Roundup. *Id*, ¶¶ 43, 143. Decedent used and / or sprayed Roundup and / or other Monsanto glyphosate products on an almost daily basis for more than 11 years, and on January 26, 2015, Decedent died from pancreatic cancer. *Id*, ¶¶ 44-46.

(Doc. 8 at 2-3 (citing Pls.' Compl., Doc. 2 at 6-43).)

Regarding jurisdiction, O&B Defendants state that Osborn & Barr Communications, Inc. and Osborn & Barr Holdings, Inc. are both Missouri corporations with principal places of business in Missouri. (Doc. 6-1 at 2 (citing Ex. 2, Aff. of Rhonda Ries at ¶¶ 3-4 and 8-9, Doc. 6-3 at 2).) Neither company is registered to do business in Pennsylvania, owns property in Pennsylvania, or pays taxes in Pennsylvania. (*Id.* at 2-3 (citing Reis Aff. at ¶¶ 5-7, 10-12, Doc. 6-3 at 3).) They further maintain that Osborn & Barr Holdings, Inc. is a holding company and has no employees. (*Id.* at 3 (citing Reis Aff. at ¶¶ 14, 15, Doc. 6-3 at 3).) Plaintiffs aver that "[a]lthough Defendant Osborn & Barr Holdings, Inc. does not have

4

any employees, they are in fact the corporate parent of Defendant Osborn & Barr Communications, Inc." (Doc. 8 at 2.)

## III. ANALYSIS

Personal jurisdiction is "an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)). Because the jurisdictional determination must proceed a substantive adjudication of a claim which could result from a Rule 12(b)(6) motion, the Court will first address the threshold issue of the Court's exercise of personal jurisdiction over O&B Defendants.

### A. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction over itself. Fed. R. Civ. P. 12(b)(2). "In deciding a motion to dismiss for lack of personal jurisdiction, we take the allegations of the complaint as true. But once a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir.1996) (internal citations omitted). Because a 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside the pleadings," once the defense has been raised, the plaintiff must rely on "competent evidence" and not merely "rely on the bare pleadings alone in order to

withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of *in pesonam* jurisdiction." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n. 9 (3d Cir.1984).

The reviewing court may decide the motion "on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) (citations omitted). However, if the district court does not hold an evidentiary hearing, 'the plaintiff[s] need only establish a *prima facie* case of personal jurisdiction.'" *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir.2009) (quoting *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3rd Cir.2007)).

A plaintiff makes a *prima facie* showing by establishing, "with reasonable particularity, sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS Nat'l Assoc. v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (citation omitted). In ascertaining whether Plaintiff has established a *prima facie* case, the court does not act as a fact-finder; rather, the court "must accept all the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Savings Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

### B.  Jurisdictional Analysis

"A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Provident Nat'l Bank v. California Federal Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir.1987). United

States Supreme Court decisions in the past several decades "have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). Pennsylvania law authorizes general personal jurisdiction over a corporation when the corporation carries on "a continuous and systematic part of its general business within this Commonwealth," 42 Pa. C.S.A. § 5301(a)(2)(iii), and authorizes specific jurisdiction over "all persons [including corporations] who are not within the scope of section 5301 ... to the fullest extent allowed under the Constitution of the United States [which] may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States," 42 Pa. C.S.A. § 5322(b). The due process clause of the Fourteenth Amendment "requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

As noted above, personal jurisdiction can be based on either general jurisdiction or specific jurisdiction, a distinction the Supreme Court reviewed *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017):

> Since our seminal decision in *International Shoe*, our decisions have recognized two types of personal jurisdiction: "general" (sometimes called "all-purpose") jurisdiction and "specific" (sometimes called "case-linked") jurisdiction. *Goodyear*, 564 U.S., at 919, 131 S.Ct. 2846. "For an individual, the

7

paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.*, at 924, 131 S.Ct. 2846. A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State. *Id.*, at 919, 131 S.Ct. 2846. But "only a limited set of affiliations with a forum will render a defendant amenable to" general jurisdiction in that State. *Daimler,* 571 U.S., at [137], 134 S.Ct., at 760.

Specific jurisdiction is very different. In order for a state court to exercise specific jurisdiction, "the *suit*" must "aris[e] out of or relat[e] to the defendant's contacts with the *forum.*" *Id.,* at ——, 134 S.Ct., at 754 (internal quotation marks omitted; emphasis added); see *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In other words, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear,* 564 U.S., at 919, 131 S.Ct. 2846 (internal quotation marks and brackets omitted). For this reason, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Ibid.* (internal quotation marks omitted).

*Bristol-Myers,*137 S. Ct. at 1779–80.

Here O&B Defendants argued in their supporting brief that they are not subject to the Court's exercise of either general or specific jurisdiction over them. (Doc. 6-1 at 6-9.) Plaintiffs acknowledged the distinction between specific and general jurisdiction in their responsive brief but asserted only that O&B Defendants are subject to the general jurisdiction of this Court. (Doc. 8 at 11.) Therefore, only the existence of general jurisdiction is in dispute. Accordingly, the Court will now turn to an analysis of the exercise of general jurisdiction.

8

In *BNSF RY v. Tyrell*, 137 S. Ct. 1549 (2017), the Supreme Court stated that *Goodyear* and *Daimler AG v. Bauman*, 571 U.S. 117 (2014),

> clarified that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler*, 571 U.S., at [127], 134 S.Ct., at 754 (quoting *Goodyear*, 564 U.S., at 919, 131 S.Ct. 2846). The "paradigm" forums in which a corporate defendant is "at home," we explained, are the corporation's place of incorporation and its principal place of business. *Daimler*, 571 U.S., at [137], 134 S.Ct., at 760; *Goodyear*, 564 U.S., at 924, 131 S.Ct. 2846. The exercise of general jurisdiction is not limited to these forums; in an "exceptional case," a corporate defendant's operations in another forum "may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S., at [139], n. 19, 134 S.Ct., at 761, n. 19.

*Tyrrell*, 137 S. Ct. at 1558. Notably, in focusing on the extent of a corporation's affiliations with the forum state required to assert general jurisdiction, *Daimler* rejected the proposition that *Goodyear* approved the exercise of general jurisdiction in every state in which a corporation "engages in a substantial, continuous, and systematic course of business," 571 U.S. at 138 (internal quotation omitted). Rather, *Daimler* focused on *Goodyear's* use of the phrase "essentially at home in the forum state" in explaining when a corporate defendant would be subject to the exercise of general jurisdiction in a state where the corporation was neither incorporated nor had its principal place of business, i.e., "an exceptional case." 571 U.S. at 139 (quoting *Goodyear*, 564 U.S. at 919).

Regarding what may constitute an "exceptional case" where a corporate defendant would be considered at home in the forum state, *Tyrell* pointed to *Daimler's* identification of

9

*Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), as such a case. 137 S. Ct. at 1558. In *Daimler*, the Court stated that its

> "1952 decision in *Perkins v. Benguet Consol. Mining Co.* remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum." *Goodyear*, 564 U.S., at [928] (internal quotation marks and brackets omitted). The defendant in *Perkins*, Benguet, was a company incorporated under the laws of the Philippines, where it operated gold and silver mines. Benguet ceased its mining operations during the Japanese occupation of the Philippines in World War II; its president moved to Ohio, where he kept an office, maintained the company's files, and oversaw the company's activities. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448, 72 S.Ct. 413, 96 L.Ed. 485 (1952). The plaintiff, an Ohio resident, sued Benguet on a claim that neither arose in Ohio nor related to the corporation's activities in that State. We held that the Ohio courts could exercise general jurisdiction over Benguet without offending due process. *Ibid.* That was so, we later noted, because "Ohio was the corporation's principal, if temporary, place of business." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780, n. 11, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).

*Daimler*, 571 U.S. at 129-30.

*Tyrell* noted that *Daimler's* analysis applied to all assertions of general jurisdiction—the constraint on the exercise of general jurisdiction described in *Daimler* "does not vary with the type of claim asserted or business enterprise sued." 137 S. Ct. at 1559. In analyzing the contacts of the plaintiff railroad, BNSF, to the forum state at issue, Montana, the Court noted that BNSF had 2000 miles of track and more than 2000 employees in Montana but it was not incorporated in Montana and it did not have its principal place of business there. *Id.* The Court then stated

> as we observed in *Daimler*, "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts." *Id.*, at [762], n. 20, 134 S.Ct., at 762, n. 20 (internal quotation marks and alterations omitted).

10

> Rather, the inquiry "calls for an appraisal of a corporation's activities in their entirety"; "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Ibid.*

*Tyrrell*, 137 S. Ct. at 1559.

O&B Defendants assert that, pursuant to *Daimler* and *Goodyear*, a court cannot exercise general jurisdiction over foreign corporations with out-of-state principal places of business except in exceptional cases. (Doc. 6-1 at 6-7.) By way of the Affidavit of Rhonda Ries, O&B Defendants support their assertion that they are Missouri corporations with principal places of business in Missouri. (Doc. 6-1 at 6 (citing Reis Aff. at ¶¶ 3-4, 8-9).) They note that Plaintiffs previously recognized these facts by including them in their Complaint. (*Id.* at 6-7 (citing Pls.' Compl. ¶¶ 7, 8).) O&B Defendants aver that "[b]ased solely on these facts, the Court cannot exercise general jurisdiction over the O&B Defendants." (*Id.* at 7 (citing *Daimler*, 571 U.S. at 138).) They further aver that

> Plaintiffs cannot show (and have not alleged) that the O&B Defendants have engaged in activity "so substantial and of such a nature as to render [them] at home in" Pennsylvania. Instead, Plaintiffs merely advance boilerplate jurisdictional allegations to the effect that Defendants O&B "frequently advertised and sold Roundup® in Lucerne [sic] County.'" *See* Complaint at ¶ 12. However, the Supreme Court has expressly rejected the notion that "in-state business" suffices to establish personal jurisdiction. *BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017).

(Doc. 6-1 at 7.)

Plaintiffs provide no affidavits or jurisdictional evidence with their responsive brief. They assert that O&B Defendants were responsible for the marketing and/or advertising of Roundup®, and aided in designing the packaging of Roundup® for two decades. (Doc. 8 at

11

7.) They also maintain that, O&B Defendants "national adverting [sic] campaigns of Roundup involved multimedia advertisements, including print and video, which appeared and/or were accessible in Luzerne County, Pennsylvania." (*Id.*) Finally, Plaintiffs state that O&B Defendants, "developed and maintain a public, national marketing website to advance Monsanto's sales called 'Growing Safely: Focused on Safety in Agriculture' which is advertised and/or accessible to consumers in Luzerne County, Pennsylvania." (*Id.*) Based on these proffered facts, Plaintiffs conclude that "[i]t is clear from Moving Defendants' aforementioned extensive contacts with Luzerne County, Pennsylvania that Moving Defendants are subject to the general jurisdiction of this Court." (*Id.* at 7-8.)

The Court concludes that Supreme Court precedent forecloses the exercise of general jurisdiction on the basis of the advertising/marketing and website activities alleged by Plaintiffs. Uncontroverted evidence shows that O&P Defendants are incorporated in Missouri and have their principal places of business in Missouri, they do not own property or pay taxes in Pennsylvania, and they are not registered to do business in Pennsylvania. (Ries Aff. ¶¶ 3-12, Doc. 6-3 at 2-3.) Plaintiffs provide no evidence or argument that O&B Defendants' contact with Pennsylvania is based on anything other than O&B Defendants general advertising, marketing, and website activities which are national in scope and appear or are accessible within Pennsylvania. If national or global general advertising, marketing, and website activity which is present in Pennsylvania were found by this Court to suffice for the exercise of general jurisdiction, its ruling would run afoul of the Supreme

Court's directive that "[a] corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Daimler*, 571 U.S. at 139 n.20; *see also Tyrrell*, 137 S. Ct. at 1559. Further, the Court of Appeals for the Third Circuit has found that "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world." *Toys "R" Us Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003). Similarly, contacts have been held to be insufficient to establish general jurisdiction where a corporation was not incorporated in Pennsylvania, did not maintain an office or an agent in Pennsylvania, and the record did not show any evidence of ongoing contractual relationships between the corporation and Pennsylvania residents, but the corporation provided direct advertising to the plaintiff through mailings and emails and also maintained an interactive website and toll-free number which Pennsylvania residents could access. *Rocke v. Pebble Beach Co.*, 541 F. App'x 208, 209-11 (3d Cir. 2013) (not precedential).

In sum, the Court has accepted all of Plaintiffs' factual allegations as true, *Carteret*, 954 F.2d at 142 n.1, and there are no disputed facts. Plaintiffs have not requested jurisdictional discovery or an evidentiary hearing, nor have they suggested that either is needed. Thus, on the present record, the Court rejects Plaintiffs' argument that O&B Defendants are subject to the Court's general jurisdiction because to do so would be to deem O&B Defendants "at home" in all places where they conduct advertising, marketing

and website activities. This the Court cannot do in light of the strict parameters established for the exercise of general jurisdiction and the consideration of similar circumstances by the Third Circuit Court of Appeals. Because Plaintiffs have not established "with reasonable particularity, sufficient contacts between the defendant and the forum state," *Farino*, 960 F.2d at 1223, they have not made out a *prima facie* case of general jurisdiction. Therefore, Defendants' Osborn & Barr Communications, Inc. and Osborn & Barr Holdings, Inc.'s Motions to Dismiss Plaintiff's Petition for Lack of Personal Jurisdiction, or, in the Alternative, for Failure to State a Claim (Doc. 6) are properly granted on the jurisdictional basis argued.[1] Accordingly, discussion of the alternate request for dismissal under Rule 12(b)(6) for failure to state a claim is not warranted.

Finally, Plaintiffs do not seek leave to amend their Complaint. "When a plaintiff does *not* seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile.'" *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (quoting *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)).

---

1. With this determination, the Court again notes that Plaintiffs have not attempted to establish a *prima facie* case of personal jurisdiction based on specific jurisdiction. *See supra* p. 8. They did not, in any way, challenge O&B Defendants' argument that Plaintiffs could not satisfy the requirements of specific jurisdiction set out in O&B Defendants' supporting brief (Doc. 6-1 at 7-9). The relevant legal framework requires Plaintiffs to have made a *prima facie* case of specific jurisdiction to survive O&B Defendants' challenge where O&B Defendants raised the issue and provided evidence in support of their assertions. *See supra* pp. 5-6. This Plaintiffs did not do and, therefore, further discussion of specific jurisdiction is not warranted.

Given the legal framework within which a Rule 12(b)(2) motion is to be considered and the parties' opportunity to present additional evidence outside the pleadings in support of their respective positions, the Court concludes that granting leave to amend is not warranted in this case. All facts proffered by Plaintiffs in support of their assertion that O&B Defendants are subject to the Court's general jurisdiction, i.e., the O&B Defendants advertising, marketing, and website activities (*see* Doc. 8 at 7-8), have been accepted as true. Facts proffered by O&B Defendants are undisputed and supported by the Ries Affidavit. (*See* Doc. 6-1 at 6-7; Doc. 6-3.) As these facts relate to a fixed period of time which preceded the commencement of this action, they are not subject to modification by amendment. Plaintiffs had an opportunity to present additional jurisdictional evidence with their responsive brief, request an evidentiary hearing, and/or request jurisdictional discovery. They did not do so. Thus, the Court proceeded on the record presented and concluded that the facts do not support Plaintiffs' assertion that O&B Defendants are subject to the general jurisdiction of this Court. Considered in this context, allowing Plaintiffs leave to amend would be futile.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Osborn & Barr Communications, Inc. and Osborn & Barr Holdings, Inc.'s Motions to Dismiss Plaintiff's Petition for Lack of Personal Jurisdiction, or, in the Alternative, for Failure to State a Claim (Doc. 6) will be granted. An

appropriate Order is filed simultaneously with this Memorandum Opinion.

_____
Robert D. Mariani
United States District Judge